

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-15-00124-CR

_____

LARRY JOE JONES, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 85th District Court
Brazos County, Texas
Trial Court No. 14-02769-CRF-85

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

After Larry Joe Jones' extremely brief flight from Texas Department of Public Safety Trooper Kurt Kelm, in his motor vehicle in Brazos County,[1] Jones' vehicle violently collided with another vehicle occupied by Britt and Shara Watson and the Watsons' two-year-old child. Later, after a brief jury trial, Jones was convicted of evading arrest with a vehicle, the offense was enhanced with a prior felony offense, and the jury made a deadly-weapon finding.[2] *See* TEX. PENAL CODE ANN. §§ 38.04(a), (b)(2)(A), 12.42(a) (West Supp. 2016).

On appeal, Jones complains that he should have been granted a mistrial, that the deadly-weapon finding was improper, that he should have been granted a new trial, and that his trial attorney was ineffective for denying Jones the right to testify in his own behalf. We affirm the judgment of the trial court because (1) Jones was not entitled to a mistrial due to Juror Appleton's late disclosure, (2) proper notice was given of the State's intent to seek a deadly-weapon finding, (3) neither a new trial nor a hearing on Jones' motion for new trial was required, and (4) ineffective assistance of counsel has not been shown.

*(1)      Jones Was Not Entitled to a Mistrial Due to Juror Appleton's Late Disclosure*

Jones argues that the trial court should have granted his motion for mistrial when it was disclosed, after deliberations had begun, that juror Margaret Appleton was the obstetrician of the State's punishment witness, Shara Watson, and, thus, "knew" Shara. Shara and her husband, Britt,

---

[1]Originally appealed to the Tenth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). We are unaware of any conflict between precedent of the Tenth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

[2]Jones was sentenced to seventy-five years' imprisonment.

2

along with their young child, were the motorists that Jones collided with to end his flight from law enforcement. The State argues that mistrial was not required, because Appleton was merely familiar with Shara, not closely connected to her, thus, there was no withholding of material information during jury selection.

When a person serves on a jury but is partial, biased, or prejudiced and that juror is selected not through the fault or lack of diligence of defense counsel but based on inaccurate answers in voir dire, a new trial can be obtained. *Von January v. State*, 576 S.W.2d 43, 45 (Tex. Crim. App. 1978); *see Salazar v. State*, 562 S.W.2d 480, 482 (Tex. Crim. App. 1978). Selecting a prejudiced or biased juror is error unless defense counsel is blameworthy in that selection. *See Gonzales v. State*, 3 S.W.3d 915, 916–17 (Tex. Crim. App. 1999). A mistrial is in order when such an error is so prejudicial that spending further time and expense would be of no benefit. *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). We review the denial of a mistrial for an abuse of discretion. *See id*.

When the problem was discovered, Appleton spoke up promptly and was questioned on the record. She expressed that her connection to Shara was not close and that her obstetrical practice was large. No suggestion was made that Appleton had intentionally withheld the information; but, instead, it appeared that she realized the connection only just before she signaled the problem. Appleton could not recall whether she had actually delivered the Watson child two years before. She firmly opined that the connection would not prevent her from being fair and impartial in assessing the facts in the case.

This situation is distinguishable from cases in which a mistrial or new trial was required. In *Salazar*, involving a sexual-assault charge against a Mexican-American defendant committed on a young girl, during jury selection, a juror knowingly withheld information that he had been an eyewitness to a sexual assault of his own daughter by a Mexican-American male. *Salazar*, 562 S.W.2d at 482 (new trial required). In a second case, the jury panel was asked if anyone knew the murder victim and family, but one panelist was selected for the jury after knowingly withholding the information that he had known the victim and family for thirty years. *See Von January*, 576 S.W.2d at 45. In a third case involving murder and voluntary manslaughter, a juror withheld the fact that she had been the victim of an assault just three months earlier. *See Herrera v. State*, 665 S.W.2d 497, 501 (Tex. App.—Amarillo 1983, pet. ref'd). The key juror in each of those cases knowingly concealed information during voir dire, in contrast to Appleton, who spoke up quickly, offered a plausible explanation for her failure to realize the connection earlier in the process, and assured the court that she could and would be impartial. *See Drousche v. State*, 651 S.W.2d 883, 888–89 (Tex. App.—Austin 1983, pet. ref'd); *Bujanda v. State*, No. 08-99-00456-CR, 2001 WL 429185, at *1–3 (Tex. App.—El Paso Apr. 26, 2001, no pet.) (not designated for publication).

Striking somewhat closer to home, an assistant Girl Scout troop leader for the victim of an aggravated sexual assault of a child failed to disclose the relationship until she recognized the victim on her entry into the courtroom. Though the juror testified that she would be fair, her relationship was held material, making erroneous her retention as a juror. *See Franklin v. State*, 12 S.W.3d 473, 477–79 (Tex. Crim. App. 2000) (court observed that assistant Girl Scout troop leader plays quasi-parental role).

4

We believe, however, that this case is more like cases in which a distant relationship or connection has been deemed nonmaterial. *See Decker v. State*, 717 S.W.2d 903, 906–08 (Tex. Crim. App. 1983) (op. on reh'g). In *Decker*, a juror had been a co-worker of the victim for nine months, but had met the victim just "seven, eight times" and did not recognize the connection until seeing the victim in the courtroom. *Id.* On examination in the aftermath of the discovery, the juror affirmed that he could be fair and impartial. *Id.* at 906; *see also Scott v. State*, 419 S.W.3d 698, 701–02 (Tex. App.—Texarkana 2013, no pet.) (juror and key prosecution witness employed by same employer in different departments deemed nonmaterial). We find no abuse of discretion in the denial of the mistrial motion.

Because mistrial was not mandated, we overrule this issue.

*(2)*     *Proper Notice Was Given of the State's Intent to Seek a Deadly-Weapon Finding*

Jones argues that the deadly-weapon finding is improper because he was not given proper notice of the State's intent to seek such a finding by including it in the indictment. The State argues in response that a deadly-weapon notice need not be in the charging instrument, but that it can be given by separate notice, which was done in this case. Here, the State filed such a separate notice on April 14, 2015, three weeks before jury selection began.

Entering a deadly-weapon finding without giving a defendant proper advance notice of intent to seek such a finding is constitutional error. *See Tellez v. State*, 170 S.W.3d 158, 163 (Tex. App.—San Antonio 2005, no pet.). In cases other than those in which the "weapon" was a named deadly weapon per se,[3] such specific notice is required and may be given either by alleging in the

---

[3]*See Ex parte Beck*, 769 S.W.2d 525, 527–28 (Tex. Crim. App. 1989).

charging instrument that defendant used or exhibited a deadly weapon or by filing a separate written notice thereof. *Ex parte Patterson*, 740 S.W.2d 766, 776 (Tex. Crim. App. 1987), *overruled on other grounds by Beck*, 769 S.W.2d at 527; *Rachuig v. State*, 972 S.W.2d 170, 177 (Tex. App.—Waco 1998, pet. ref'd).[4]

Because the State filed a separate notice meeting the requirements of Texas law, we overrule this issue.

*(3)     Neither a New Trial nor a Hearing on Jones' Motion for New Trial Was Required*

Jones also claims that he was improperly denied a new trial without a hearing. The State responds that there is no abuse of discretion here, because the record does not establish proper presentment of the motion to the trial court and because Jones' motion was not filed timely. From this record, it appears that Jones' motion for new trial was untimely.

We review the denial of a new-trial motion for an abuse of discretion. *Salazar v. State*, 38 S.W.3d 141, 148 (Tex. Crim. App. 2001); *Priester v. State*, 478 S.W.3d 826, 834 (Tex. App.—El Paso 2015, no pet.). The relevant evidence is viewed in the light most favorable to the trial court's rulings, and trial court rulings are upheld if they are within the zone of reasonable disagreement. *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007); *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004). Denying a motion for new trial is an abuse of discretion only if no reasonable view of the record could support the trial court's ruling. *Webb*, 232 S.W.3d at 112.

---

[4]Under certain circumstances, a defendant may have adequate notice of a deadly-weapon issue based on the offense charged. *See Blount v. State*, 257 S.W.3d 712 (Tex. Crim. App. 2008).

6

A motion for new trial is timely if filed "before, but no later than 30 days after, the date when the trial court imposes or suspends sentence in open court." TEX. R. APP. P. 21.4(a). Here, sentence was orally decreed in open court May 5, 2015. Jones' motion for new trial was filed late, on June 17, 2015. Because it was not filed until after the deadline, it was not timely. It was, therefore, proper to overrule it.

Even had the motion for new trial been filed timely, the trial court did not err in refusing to hold a hearing on it, as nothing in this record suggests that it was timely presented to the trial court for decision. To entitle himself or herself to a hearing on a motion for new trial, the movant must present the motion within ten days after it is filed, unless the trial court allows presentment— not shown here—within seventy-five days from the date when the court imposes sentence in open court. TEX. R. APP. P. 21.6; *Musgrove v. State*, 960 S.W.2d 74, 76 (Tex. Crim. App. 1998); *Davis v. State*, 7 S.W.3d 695, 698 (Tex. App.—Houston [1st Dist.] 1999, no pet.). To "present" the motion, the movant must either actually deliver the motion to the trial court or otherwise bring it to the attention or actual notice of the court. *Carranza v. State*, 960 S.W.2d 76, 79 (Tex. Crim. App. 1998). Since there is no indication that the motion was ever presented to the trial court, the trial court cannot be faulted for failing to take action on it.

Because the motion for new trial was late and unpresented to the trial court, we overrule this issue.

*(4)    Ineffective Assistance of Counsel Has Not Been Shown*

Jones also urges that he should have been allowed to testify. In the heading initially stating the issue, he claims that it is both error by the trial court and ineffective assistance of counsel. But trial-court error[5] is not argued in the body of Jones' brief. Because no issue of trial-court error is presented to us, we address only the claim that Jones' trial attorney was ineffective in this regard.

The State responds that Jones' trial counsel was not ineffective on this basis, because counsel properly advised Jones of his right to testify and because Jones ultimately made a voluntary decision not to testify. We agree.

At trial, after various discussions on the subject, Jones ultimately and grudgingly agreed not to testify. That should end the inquiry, as Jones had agreed to the recommendation of his attorney. But was it ineffective for Jones' attorney to strongly advise Jones against testifying? We think not.

Certainly, Jones clearly indicated his initial desire to testify. He wanted to put before the jury the matter of his missing wallet, which, as Jones tells it, went missing from his vehicle in the immediate aftermath of the vehicle crash that ended his brief flight from law enforcement. Jones alleges that Trooper Kelm, the arresting and testifying officer, took the wallet from Jones' vehicle. Kelm was the central witness for the State in proving Jones' offense in this case. Jones insisted

---

[5]To the extent that Jones intends to raise on appeal a complaint that the trial court erred in not allowing him to testify, such issue is inadequately briefed. Because Jones' brief cites no authorities and provides no analysis on the claim that the trial court erred in this way, it fails to assert the issue for decision. *See* TEX. R. APP. P. 38.1(i) (to assert issue on appeal, "brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities"); *Cardenas v. State*, 30 S.W.3d 384, 393 (Tex. Crim. App. 2000) (appellate issue forfeited on appeal if brief fails to present adequate supporting arguments and authorities).

8

on testifying, but Jones' court-appointed attorney was equally insistent in advising against Jones' getting on the stand. Jones claims that this rendered his attorney ineffective.

To successfully claim ineffective assistance of counsel, a defendant must establish that (1) his or her attorney's performance was deficient, and (2) there is reasonable probability that the result of the proceeding changed as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The first *Strickland* prong requires proving by a preponderance of the evidence that defense counsel's performance fell below an objective standard of reasonableness, that is, below professional standards. *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). The second prong requires showing a reasonable probability that counsel's substandard conduct harmed the defendant with a worse result. *See Strickland*, 466 U.S. at 694. In assessing counsel's performance, we look to the whole representation and use a strong presumption that the representation involved reasonable professional assistance or trial strategy. *Thompson*, 9 S.W.3d at 813. A finding of ineffective assistance must be firmly supported in the record. *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996).

We see nothing in this record demonstrating that counsel's performance fell below an objective standard of reasonableness. Counsel consistently counseled Jones not to testify. While Jones assails the wisdom of that advice, we can see nothing in this record supporting Jones' position other than Jones' bare opinion that he could undermine Kelm's credibility as a witness by simply accusing him of theft, without any apparent proof. Rather than finding substandard the advice not to testify, we conclude that it was entirely reasonable for Jones' trial attorney to counsel

9

Jones against testifying, in anticipation that such a venture would not meet with much, if any, success, and that the result would be more expected damage from the cross-examination of Jones by the State than any reasonably expected benefit from Jones' testimony on direct. *See Agosto v. State*, 288 S.W.3d 113, 116 (Tex. App.—Houston [1st Dist.] 2009, no pet.).

Because ineffective assistance of counsel has not been established, we overrule this issue.

We affirm the judgment of the trial court.


Josh R. Morriss, III
Chief Justice

Date Submitted:     September 19, 2016
Date Decided:      October 7, 2016

Do Not Publish